Eastern District of Kentucky
FILED
JUN 20 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-410-GWU

JAMES R. ENGLISH,     PLAINTIFF,

VS.     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

English

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

English

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

>whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

English

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

English

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

English

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James R. English, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine, a cervical strain, and an affective disorder. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. English retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-23). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of lifting 25 pounds from the waist level, with lifting and carrying of 20 pounds occasionally, and 10 pounds frequently, but no lifting of items greater than 10 pounds from floor level. (Tr. 491). He also had the following non-exertional impairments: (1) would require the option of sitting or standing at 30 minute intervals;

English

(2) could not climb ladders or ropes; (3) could occasionally bend, stoop, kneel, squat, crouch, and climb ramps or stairs; (4) could not push or pull more than frequently with the lower extremities or reach or lift overhead with the upper extremities more than frequently; (5) needed to avoid riding in or on vibratory vehicles for any extended distance; and (6) had no less than a "limited but satisfactory" ability to make any mental adjustments. (Tr. 491-2). The VE responded that there were jobs that such a person could perform in the state and national economies, and proceeded to give examples and the numbers in which they existed at both the light and sedentary levels. (Tr. 492-3).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a pinched nerve in his lower back which made it impossible for him to sit or stand longer than 15 minutes (Tr. 66), but at the administrative hearing testified that he could sit for 30 minutes and stand for about 20 to 25 minutes, although he could walk only 15 minutes (Tr. 463, 475, 477). He also described additional problems, including headaches, neck pain, and carpal tunnel syndrome. (Tr. 472, 476, 489-90). He felt that he could lift 20 pounds, but could not bend over and pick it up. (Tr. 467). Mr. English also described depression, for which he was receiving medication and receiving treatment from a therapist. (Tr. 472-4).

8

English

Medical evidence in the transcript includes records showing that Mr. English had degenerative changes of the lumbosacral spine, according to an x-ray in 1999, prior to the date he stopped working (Tr. 243) in April, 2003 (Tr. 326). In any case, after an increase in lower back pain in April, 2003, the plaintiff's family physician, Dr. John Gilbert, referred him to a neurosurgeon, Dr. James Bean (Tr. 346). Dr. Bean reviewed a new MRI of the lumbosacral spine showing severe degenerative changes at L4-5, moderate changes at L5-S1, and mild degenerative changes at L3-4. (Tr. 326, 347).[1] His examination showed negative straight leg raising, and equal reflexes; he diagnosed a lumbar sprain with degenerative disc, and recommended chiropractic treatment or physical therapy and conditioning exercise. (Id.). By July 28, 2003, Dr. Bean opined that Mr. English had reached maximum medical improvement and imposed restrictions of lifting no more than 20 pounds, standing or walking 2 to 4 hours a day with the ability to change positions, and no bending, twisting, stooping, or crawling. (Tr. 325). He reiterated that Mr. English could not perform "continuous" sitting or standing, and was limited to "sedentary or light work incompatible with his historical employment." (Id.). Thus, the ALJ's functional capacity determination is substantially consistent with the opinion of Dr. Bean.

---

[1] Although the radiologist interpreting the MRI noted an L4-5 anterior herniation (Tr. 347), Dr. Bean saw no herniation of clinical significance and no indication for surgery. (Tr. 326).

9

It is also essentially consistent with the opinion of Dr. James Templin, a specialist in pain management, who examined Mr. English in March, 2004, and reviewed previous records. (Tr. 430-1). Dr. Templin's examination showed a decreased range of motion of the cervical spine and some midline tenderness in the lumbar spine, with forward flexion limited to 52 degrees. (Tr. 431). Reflexes were equal, but there was decreased sensation to pinprick in the right leg in a dermatomal pattern consistent with L4. Straight leg raising was positive at 54 degrees on the right side, there was a reduced range of motion of the hips, and deep knee bends were performed with poor balance. (Id.). After reviewing x-rays and the MRI from 2003, Dr. Templin concluded that the plaintiff had functional restrictions largely consistent with the ALJ's hypothetical question. (Tr. 433).[2]

The ALJ's physical factors are also consistent with the opinion of Dr. Mark Burns, who examined the plaintiff in September, 2003 and opined that he would be able to perform activities with minimal difficulty (Tr. 336) and with the opinion of Dr. John Rawlings, a state agency reviewer (Tr. 374-84).

The plaintiff objects that the ALJ did not give controlling weight to the opinion of his treating family physician, Dr. John Gilbert, and to a chiropractic source, Mark

---

[2]Dr. Templin's restrictions were mirrored by the ALJ's hypothetical question, except that the physician stated that Mr. English should not engage in any repetitive lifting from floor level, and needed to avoid "repetitive" use of foot controls, as opposed to pushing or pulling no more than "frequently" with the lower extremities. (Tr. 491). The plaintiff has not specifically alleged any inconsistency involving these terms.

10

English

Sexton, both of whom opined that he could not perform full-time sitting and standing, in addition to having other restrictions. (Tr. 319-20, 328-31). However, a chiropractor is not an acceptable medical source under the Commissioner's regulations. 20 C.F.R. Section 404.1513 (2005). Dr. Gilbert's opinion was given on July 24, 2003 (Tr. 319), a few days before Dr. Bean determined that the plaintiff had reached maximum medical improvement and stated that he could perform sedentary or light work, as previously described (Tr. 325). Dr. Gilbert had referred his patient to Dr. Bean (Tr. 345), and subsequently referred Mr. English to another neurosurgeon, Dr. Joseph Williams, at the patient's request (Tr. 340), but as of September 25, 2003, Dr. Gilbert stated that he considered Mr. English had achieved maximum medical improvement, and, since he had been evaluated by Dr. Bean, he recommended referral to a pain clinic (Tr. 339). No new restrictions were given. Mr. English testified that he had not seen Dr. Gilbert since that time. (Tr. 488). Under the circumstances, the ALJ could reasonably have chosen not to rely on Dr. Gilbert's opinion.

The ALJ's mental restrictions are supported by the opinion of Dr. William Rigby, a consultative psychologist, who diagnosed dysthymia and concluded that the plaintiff would have a "fair" ability to relate to co-workers and supervisors and adapt to stress and pressures normally found in day-to-day work settings. (Tr. 373). A state agency psychologist who subsequently reviewed the record concluded that the

English

plaintiff did not even have a "severe" mental impairment. (Tr. 386, 398). Records from Kentucky River Community Care, an outpatient mental health treatment clinic, indicate that the plaintiff was given a diagnosis of a major depressive disorder, but with a Global Assessment of Functioning (GAF) score of 61-70. (Tr. 414). A GAF score in this range reflects only mild symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. Therefore, the plaintiff failed to establish greater restrictions than indicated in the hypothetical question.

The decision will be affirmed.

This the ___20___ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE